UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROCHESTER LABORERS' WELFARE-S.U.B.
FUND, by Robert Brown, as Chairman,
and Daniel Hogan, as Secretary;
ROCHESTER LABORERS' PENSION FUND,
by Robert Brown, as Chairman, and
Daniel Hogan as Secretary;
ROCHESTER LABORERS ANNUITY FUND, by
Robert Brown, as Chairman and
Daniel Hogan, as Secretary;
ROCHESTER LABORERS' APPRENTICE AND
TRAINING FUND, by Robert Brown, as
Chairman, and Daniel Hogan, as
Secretary; LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA, LOCAL UNION
NO. 435, by Daniel Kuntz, as
Business Manager,

               Plaintiffs,

   -vs-

FLOWER CITY MONITORS, INC. and
LENORA L. PAIGE, Individually
and as an Officer of FLOWER CITY
MONITORS, INC.,

               Defendants.

**DECISION AND ORDER**
**No. 6:15-cv-06446(MAT)**

---

## INTRODUCTION

This an action arising under the Employee Retirement Income Security Act of 1974, 29 U.5.C. §§ 1001 et seq. ("ERISA"), and the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a) ("LMRA"). The Rochester Laborers' Welfare-S.U.B. Fund, the Rochester Laborers' Pension Fund, the Rochester Laborers'

Apprentice and Training Fund, the Rochester Laborers' Annuity Fund ("the Rochester Laborers' Funds"), through their fiduciaries, Robert Brown and Daniel Hogan; and the Laborers' International of North America Local Union 435 ("the Union"), through its fiduciary Daniel Kuntz (collectively, "Plaintiffs"), seek monetary and injunctive relief against Flower City Monitors, Inc. ("Flower City"), a New York corporation with a principal place of business in Rochester, and Lenora Paige ("Paige"), the president of Flower City (collectively, "Defendants").

## FACTUAL BACKGROUND

The Rochester Laborers' Funds are multi-employer plans, as defined in ERISA §3(37), 29 U.S.C. § 1002(37), and are employee benefit plans, as defined in ERISA § 3(3), 29 U.S.C. §1002(3). The Rochester Laborers' Funds are recipient and collection agents for contributions due to the Rochester Laborers' Employers Cooperative Education Trust ("L.E.C.E.T."). The Union is a labor organization within the meaning of the LMRA § 301(a), 29 U.S.C. §185(a).

Flower City and the Union are parties to collective bargaining agreements ("CBAs") covering work at two projects as follows: (1) the 2009 through 2014 Commercial Building Agreement between Local Union No. 435 Laborers International Union of North America and the Construction Industry Association of Rochester, N.Y., Inc. and Certain Independent Contractors, dated May 7, 2012, as adopted by Flower City in connection with the SUNY Brockport Tuttle Hall North

Project (Dkt #11-1, pp. 58-80 of 82); and (2) the 2009 through 2014 Commercial Building Agreement between Local Union No. 435 Laborers International Union of North America and the Construction Industry Association of Rochester, N.Y., Inc. and Certain Independent Contractors, dated February 19, 2014, as adopted by Flower City in connection with the Genesee Valley Park Pool and Ice Rink Project (Dkt #11-1, pp. 81-82 of 82). During the month of July 2012, and the period from March 2014 through May 2014, Flower City performed work covered by the CBAs at the SUNY Brockport and Genesee Valley Park projects that required Flower City to remit fringe benefit contributions and deductions to Plaintiffs. However, according to Plaintiffs, Flower City failed to remit the required contributions and deductions for the hours worked by its employees at the two covered projects.

Plaintiffs subsequently conducted audits of Flower City's remittance reports and discovered a shortfall of over sixteen thousand dollars in contributions and deductions. In February of 2014, Plaintiffs referred the matter to their counsel to pursue collection of the debt uncovered by the audit. After these efforts were unsuccessful, Plaintiffs instituted this action by filing their Complaint on July 29, 2015.

On October 13, 2015, a Clerk's Notice of Default was entered against Defendants for failure to plead or otherwise defend this action.

Meanwhile, beginning July of 2015, Plaintiffs engaged in efforts to obtain the books and records needed to conduct a new audit and quantify Defendants' debt. However, the chronology of correspondence submitted by Plaintiffs indicates that Defendants were uncooperative in responding to Plaintiffs' requests. In addition to Defendants, Plaintiffs also sought records from various third parties (property owners and general contractors) who may have had business relationships with Plaintiffs.

On May 4, 2017, Plaintiffs filed a combined Motion to Amend the Complaint, pursuant to Federal Rule of Civil Procdure ("F.R.C.P.") Rule 15 and Motion for Default Judgment, pursuant to F.R.C.P. 54 and 55(b)(2). On June 5, 2017, through counsel, Defendants filed a Motion to Vacate the Notice of Default, and opposed Plaintiffs' request to amend and for default judgment. For the reasons discussed herein, Defendants' Motion to Vacate the Notice of Default is denied.[1]

## DISCUSSION

### I. General Legal Principles

Under F.R.C.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . , the clerk must enter the party's default." FED. R. CIV. P. 55(a). While the entry of default "is therefore not

---

[1] Plaintiffs' Motion to Amend and Motion for Default Judgment will be addressed in a separate Decision and Order.

discretionary[,]" Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (per curiam) ("Moulton Masonry"), the court subsequently "'may set aside an entry of default for good cause.'" Id. (quoting FED. R. CIV. P. 55(c) (emphasis in original)). The Second Circuit reviews decisions under F.R.C.P. 55(c) for abuse of discretion. Moulton Masonry, 779 F.3d at 186 (citation omitted).

As F.R.C.P. 55(c) does not define "good cause," the Second Circuit has established the following criteria that must be assessed: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (citations omitted). The Court reviews the three factors in turn below.

## II. The "Good Cause" Criteria

### A. Wilfulness of the Default

In the context of a default, the Second Circuit has interpreted "willfulness" "'to refer to conduct that is more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'" Moulton Masonry, 779 F.3d at 186 (quoting SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998); ellipsis in original; footnote omitted). "Where a defendant ignores a complaint without action, a default is deemed willful." Kulwa v. Obiakor OB/GYN P.C., No. 12-CV-1868 JG MDG, 2013 WL 504383, at *3

(E.D.N.Y. Feb. 8, 2013) (citing <u>United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.—Charco Redondo Butane</u>, 755 F. Supp. 1195, 1205 (S.D.N.Y. 1989) (citing <u>Marziliano v. Heckler</u>, 728 F.2d 151, 156 (2d Cir. 1984)); other citation omitted).

Defendants argue that willfulness is not present, because "[t]here has been no deliberate strategy to delay these proceeding." (Defs' Mem. (Dkt #16-1) at 7 (citing Affidavit of Lenora L. Paige ("Paige Aff") (Dkt # 16-2)). Paige indicates that she is president of Flower City and, and at the time that the Complaint was served,[2] [Flower City] was in the midst of a busy construction season[,]" and she "simply lost sight of the Complaint." (Paige Aff. ¶ 5). Paige does not dispute that she was the individual personally served with the Summons and Complaint on August 18, 2015. Defendants were required to file an answer by September 8, 2015, but failed to do so.

On October 13, 2015, the Clerk of Court entered a default as to Flower City and Paige. (<u>See</u> Clerk's Entry of Default (Dkt #7)). By letter dated October 12, 2015, Plaintiffs' counsel served

---

[2] Plaintiffs indicate that they served Paige, individually and on behalf of Flower City Monitors, Inc., with the Complaint on August 18, 2015. (<u>See</u> Affidavit of Jennifer Clark, Esq. ("Clark Aff.") (Dkt #11-4) (stating that the "Summons and Complaint were served upon Defendants by personally delivering two (2) copies of the same to Defendant Lenora L. Paige, individually and as an officer and a person authorized to accept service on behalf of Defendant Flower City Monitors, Inc. . . ."), & Clark Aff. Exhibits ("Exs.") A & B (Affidavits of Service sworn to on August 19, 2015).

Defendants with a copy of Plaintiffs' Request for Entry of Default and the Affidavit in Support of Request for Entry of Default. (See Affidavit of Jennifer Clark, Esq. (Dkt #19-3), ¶ 6 & Ex. B). On October 13, 2015, Defendants were served with various discovery demands including notices to take depositions and a request for production of documents. (See id., ¶ 8 (Dkt #19-3) & Ex. C). On October 15, 2015, Plaintiffs' attorney, Jennifer Clark, Esq., spoke to Paige about the litigation and Defendants' obligations to produce their records for audit. (See id., ¶ 9 (Dkt #19-3)). After Defendants produced some records for review by Plaintiffs' auditor, Plaintiffs' attorney sent a letter dated November 24, 2015, adjourning the depositions pending the audit results. On May 8, 2014, April 3, 2017, and April 11, 2017, Defendants were provided with copies of the audit. (See id., ¶¶ 11-12 (Dkt #19-3)). In April of 2017, Plaintiffs informed Defendants that they would proceed with seeking default judgment absent a proposal by Defendants to pay the debt. (See id., ¶ 12 & Ex. E (Dkt #19-3)). Defendants do not dispute these assertions. Defendants did not file anything in this matter until May 16, 2017, when their current attorney, filed a Notice of Appearance, which was followed by the filing, on May 17, 2017, of a Motion for an Extension of Time to Respond to the Motion for Default Judgment. Thus, Defendants waited 1 year, 8 months, and 29 days to respond to Plaintiffs' request for an entry of default.

Plaintiffs argue that the factual circumstances surrounding Defendants' default are analogous to those in Moulton Masonry, 779 F.3d at 186-87, where the Second Circuit determined that the defendants had acted willfully. In that case, "there [was] no dispute that [the individual defendant] was aware of the legal action pending against him and his company based on his own admissions and the fact that the corporate defendant requested, through counsel, an extension of time to respond." Id. at 186. "Despite this knowledge," the defendants in Moulton Masonry "failed to file a responsive pleading for over nine months after the receipt of the summons and complaint, nearly eight months after the defendants were informed that the plaintiffs had requested an entry for default, and six months after they were served with discovery demands." Id. The defendants' delays in Moulton Masonry thus were considerably shorter than Defendants' delays in responding here.

In Moulton Masonry, the defendants' "primary justification for failing to file a responsive pleading, or participate in the litigation in any way, is that [the individual defendant] believed his participation in the audit was sufficient to discharge the defendants' duties. In his view . . . his failure to file a responsive pleading was a mere mistake and, therefore, excusable." 779 F.3d at 186. Similarly, Paige asserts that her failure to respond was simply an "oversight", which Defendants argue "was not so egregious as to rise above mere negligence or carelessness. . .

." (Defs' Mem. (Dkt #16-1) at 7). However, based on the documentation submitted by Plaintiffs, it appears that Defendants refused to cooperate with Plaintiffs' attempt to gather records to conduct the necessary audit.

Nevertheless, even accepting that Defendants' argument "might give rise to an inference that their failure to file a responsive pleading was not in bad faith, 'a finding of bad faith is [not] a necessary predicate to concluding that a defendant acted "willfully."'" (quoting Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998)). Instead, to "support a finding of 'willfulness,'" "it is sufficient that the defendant[s] defaulted deliberately." Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998) (district court erred in requiring bad faith; willfulness of defendants' default demonstrated where corporate defendants, through their principals, were served with the complaints and, subsequently, with the plaintiffs' joint application for damages; principals were both aware that a lawsuit was pending against them and, specifically, that two plaintiffs sought damages of $25,000, per trademark violation, against their respective companies; and the district court specifically found that principals made deliberate decisions not to respond to the plaintiffs' damages application). In light of these precedents, the Court is compelled to find that Defendants' conduct in "simply ignore[ing] the complaint without action[,]" United Bank of Kuwait

PLC, 755 F. Supp. at 1205 (citations omitted), "indicates just such a clear pattern of willful and deliberate disregard for the litigation." Moulton Masonry, 779 F.3d at 187 (citing Guggenheim Capital, LLC, 722 F.3d at 455); see also Belizaire v. RAV Investigative & Sec. Servs., Ltd., 310 F.R.D. 100, 105 (S.D.N.Y. 2015) (finding willfulness where defendant "fail[ed] to offer evidence of its own diligence in monitoring this case, aside from delivering the initial Complaint to its counsel" and "[n]otably, RAV [made] no mention of the communications mailed to it throughout the course of this litigation, detailed above, which should have apprised RAV not only of the suit's continued existence, but of the fact that a damages hearing following a default judgment was taking place").

**B.   Existence of a Meritorious Defense**

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment," the defaulting defendants "need not establish [their] defense conclusively, but [they] must present evidence of facts that, if proven at trial, would constitute a complete defense." SEC v. McNulty, 137 F.3d at 740 (citation and internal quotation marks omitted).

Defendants assert that they have one or more meritorious defenses to Plaintiffs' Complaint. Primarily, Defendants contend that the results of Plaintiffs' April 3, 2017, indicating that

Defendants owe $10,925.85 for the Genesee Valley Restoration ("GVR") project, is based upon erroneous information. Paige avers that she bid the job as a subcontractor to Genesee Building Restoration, which was under contract with the City of Rochester for restoration work to the Genesee Valley Park Pool and Ice Rink. Paige indicates that Flower City's bid "was based on the premise that the Plaintiff would not have any involvement in the project[,]" but, "between the bid and the execution of the subcontract agreement, the Plaintiff became involved, at which time [Paige] objected." Paige asserts that she had a conversation "with Ace, a representative of the Plaintiff at the time, in which [she] explained the situation to him, and [they] worked out a resolution wherein [she] would utilize some Union labor, put [her] own employees on the job, and pay them separately at the same rate paid to a Union labor member." Paige avers that "[i]t was agreed that if [she] paid [her] own employees separately, no contributions needed to be made to the Union on their behalf." Paige points to documentation attached to the April 3, 2017 audit as providing support for this oral agreement. In essence, Paige asserts that the written CBA was modified by this oral agreement between herself and one of Plaintiffs' representatives for Plaintiffs not to enforce certain terms of the CBA.

Plaintiffs dispute that there was any such oral agreement. Nonetheless, even assuming the existence of such an oral agreement,

-11-

it is invalid to modify Defendants' obligations under the terms of the written collective bargaining agreement. See Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990) ("[A]n employer may not assert that the union orally agreed not to enforce the terms of the collective bargaining agreement[.]") (citing Central States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1154 (7th Cir. 1989) ("Local 50 and Gerber signed and sent to the plans a participation agreement, separate from the collective bargaining agreement, in which Gerber promised to contribute on behalf of all of its drivers. Section 302(c)(5)(B), like § 515, prevents a court from giving force to oral understandings between union and employer that contradict the writings.") (citing Mo-Kan Teamsters Pension Fund v. Creason, 716 F.2d 772, 777 (10th Cir. 1983); Waggoner v. Dallaire, 649 F.2d 1362, 1366 (9th Cir. 1981)). Therefore, this is not a potentially meritorious defense available to Defendants.

Defendants next assert that the 2009-2014 CBA expired on April 30, 2014 (see Dkt #11-1, p. 61 of 82), and therefore Plaintiffs' attempt to seek contributions beyond this date, into May of 2014, is improper. (See Dkt# 11-1, ¶ 14, p. 5 of 82). Plaintiff counters that this collective bargaining agreement did not expire, and that Defendants are bound, by their participation in the Employer's Association, to any subsequently negotiated bargaining agreements. See Charles D. Bonanno Linen Serv., Inc. v. N.L.R.B., 454 U.S. 404,

410-11 (1982) (The NLRB's "rules [for withdrawal from multiemployer units], which reflect an increasing emphasis on the stability of multiemployer units, permit any party to withdraw prior to the date set for negotiation of a new contract or the date on which negotiations actually begin, provided that adequate notice is given. Once negotiations for a new contract have commenced, however, withdrawal is permitted only if there is 'mutual consent' or 'unusual circumstances' exist.") (quotation omitted); P & C Lighting Ctr., 301 NLRB 828, 831-32 (1991) ("The letter of assent signed by Panter provides that the authorization given to the Association remains in effect until written notice is given at least 150 days prior to the expiration of the then current agreement. There has been no evidence that such notification has been given. Accordingly, Respondent was bound to the 1981 collective-bargaining agreement between the Association and the Union, and to all subsequent agreements.").

Here, on May 7, 2012, and on February 19, 2014, Flower City executed the 2009-2014 CBA, thereby delegating its bargaining rights to the Employer's Association. (See Affidavit of Daniel Kuntz ("Kuntz Aff.") (Dkt #11-1), ¶ 6 & Ex. B at 1). There is no evidence that Flower City terminated or repudiated the 2009-2014 CBA. (See, e.g., Kuntz Aff., Ex. B at 35 (Dkt #11-1, p. 78 of 82)). Thus, Flower City never terminated the Employer Association's authority to engage in collective bargaining on its behalf. As a

result, Flower City became bound to the subsequent collective bargaining agreement, which was negotiated on April 29, 2014, and effective May 1, 2014, through April 30, 2019. The Court finds that this defense likewise is not meritorious.

Defendants also raise general objections to Plaintiffs' damage calculations. "Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320-21 (2d Cir. 1986). Furthermore, Defendants cannot now be heard to complain that the amount of damages was incorrectly calculated when they repeatedly refused to respond to Plaintiffs' discovery requests. See, e.g., King v. Galluzzo Equip. & Excavating Inc., 223 F.R.D. 94, 99 (E.D.N.Y. 2004) (finding that employers seeking to vacate default judgment for delinquent employee fund contributions could not assert as meritorious defense warranting vacatur of default judgment that amount of judgment was incorrectly calculated, when they had consistently refused to respond to discovery requests and to fund-trustees' application for default judgment) (citations omitted). Furthermore, Defendants' assertion they are not liable for interest, liquidated damages, attorneys' fees, auditors' fees, and costs, is not a potentially meritorious defense. See Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors,

Inc., 68 F.3d 1502, 1507 (2d Cir. 1995) (ERISA § 502(g)(2) stating that in action by plan fiduciary to recover delinquent contributions to multiemployer plan in which judgment in favor of the plan is awarded, court shall award plan (1) unpaid contributions, (2) interest on unpaid contributions, (3) liquidated damages, or (4) attorney fees and costs, does not require that favorable judgment be awarded on each of the four items of relief specified therein, but simply directs that, once there is favorable judgment, plaintiff is entitled to all the measures of relief not already obtained; judgment will necessarily reflect fewer than all of the forms of relief available if partial relief has been obtained by way of paid up contributions"). While Paige, as an individual defendant, is not liable for liquidated damages, Moulton Masonry, 779 F.3d at 190, prejudgment interest and attorneys' fees "*can* constitute appropriate equitable or remedial relief" under 29 U.S.C. §§ 1109(a) and 1132(g)(1), respectively. Id. (emphasis in original).

 Defendants further assert that it is improper for the Court to enter a default judgment on the basis of allegations made "upon information and belief" in Plaintiffs' Complaint. A party's default, however, constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp., 973 F.2d 155, 158 (2d Cir.), cert. denied, 506 U.S. 1080 (1993).

Thus, upon a party's default, the court is required to accept the other party's "factual allegations as true and draw all reasonable inferences in its favor[.]" Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (noting that, where a party moves for a default judgment after another party's default, the moving party is "entitled to all reasonable inferences from the evidence offered")); see also Moulton Masonry, 779 F.3d at 188 ("The allegations in the complaint when accepted as true, as we are required to do in deciding whether a default judgment is appropriate, establish the following facts. . . . [which] are sufficient to render the corporate defendant liable under ERISA.") (citing 29 U.S.C. § 1145; Finkel, 577 F.3d at 85). This is not a meritorious defense.

Finally, Defendants point to the fact that Flower City remitted cash contributions directly to its employees and argue that this relieves them of their obligations to remit contributions to Plaintiffs. This is not a meritorious defense. See O'Hare v. Gen. Marine Transp. Corp., 740 F.2d 160, 170 (2d Cir. 1984) (rejecting employer's argument that "since it provided alternate insurance coverage for its employees during the time in question, and because the trust therefore did not have to pay for insurance for the covered General Marine employees during that time, it should not be held liable to the Insurance Fund for unpaid

contributions"; "the fact that appellant's improper conduct now requires it in essence to pay twice is simply irrelevant as regards its obligation to the Fund") (citing Brogan v. Swanson Painting Co., 682 F.2d 807, 809 (9th Cir. 1982) (The contractor's cash payment of equivalent benefits to non-union employees does not, however, in itself, excuse the contractor's obligation to contribute to the trust funds."); other citation omitted).

### C. Prejudice to Plaintiffs

Typically, a party seeking to prevent vacatur of a notice of default or of a default judgment will show prejudice by asserting, e.g., "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment . . . ." Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982) (citations omitted). On the other hand, "delay standing alone does not establish prejudice." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993) (citing Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)). Plaintiffs have not demonstrated any prejudice that would result from vacating the clerk's entry of judgment. The prejudice factor does not weigh in favor of denying Defendants' motion.

### D. Summary

On balance, although there is no indication that Plaintiffs would be prejudiced if this Court vacated the notice of default, the first two factors weight strongly in favor of denying

Defendants' motion to vacate. As discussed above, Defendants willfully defaulted and have not succeeded in stating a potentially meritorious defense. Accordingly, the Court exercises its discretion to deny Defendants' motion. See, e.g., Farrell v. Cty. Van & Storage, Inc., No. 96-CV-1174, 1996 WL 705276, at *3 (E.D.N.Y. Nov. 25, 1996) (court rejected plaintiff's attempted showing of prejudice based on delay; however, other two factors, willfulness and lack of meritorious defense, "tip[ped] strongly in favor of denying defendant's motion"); see also See Moulton Masonry, 779 F.3d at 187 (finding district court did not abuse its discretion; stating it "need not reach the question of whether the plaintiff would suffer prejudice as [court] [is] 'persuaded that the default was willful and . . . unpersuaded that the defaulting party has a meritorious defense'") (quoting McNulty, 137 F.3d at 738).

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants have failed to establish "good cause" for their default. Accordingly, Defendants' Motion to Vacate the Clerk's Notice of Default is denied.

**SO ORDERED.**

                                                S/Michael A. Telesca
                                          HONORABLE MICHAEL A. TELESCA
                                          United States District Judge

DATED:   July 18, 2017
        Rochester, New York