UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROCHESTER LABORERS' WELFARE-S.U.B.
FUND, by Robert Brown, as Chairman,
and Daniel Hogan, as Secretary;
ROCHESTER LABORERS' PENSION FUND,
by Robert Brown, as Chairman, and
Daniel Hogan as Secretary;
ROCHESTER LABORERS ANNUITY FUND, by
Robert Brown, as Chairman and
Daniel Hogan, as Secretary;
ROCHESTER LABORERS' APPRENTICE AND
TRAINING FUND, by Robert Brown, as
Chairman, and Daniel Hogan, as
Secretary; LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA, LOCAL UNION
NO. 435, by Daniel Kuntz, as
Business Manager,

                     Plaintiffs,

   -vs-

FLOWER CITY MONITORS, INC. and
LENORA L. PAIGE, Individually
and as an Officer of FLOWER CITY
MONITORS, INC.,

                     Defendants.

**DECISION AND ORDER**
**No. 6:15-cv-06446(MAT)**

---

## INTRODUCTION

This an action arising under the Employee Retirement Income Security Act of 1974, 29 U.5.C. §§ 1001 et seq. ("ERISA"), and the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a) ("LMRA"). The Rochester Laborers' Welfare-S.U.B. Fund, the Rochester Laborers' Pension Fund, the Rochester Laborers' Apprentice and Training Fund, the Rochester Laborers' Annuity Fund

("the Rochester Laborers' Funds"), through their fiduciaries, Robert Brown and Daniel Hogan; and the Laborers' International of North America Local Union 435 ("the Union"), through its fiduciary Daniel Kuntz (collectively, "Plaintiffs"), seek monetary and injunctive relief against Flower City Monitors, Inc. ("Flower City"), a New York corporation with a principal place of business in Rochester, and Lenora Paige ("Paige"), the president of Flower City (collectively, "Defendants").

Plaintiffs instituted this action by filing their Complaint on July 29, 2015. On October 13, 2015, a Clerk's Notice of Default was entered against Defendants for failure to plead or otherwise defend this action. Defendants filed a Motion to Vacate the Notice of Default on June 5, 2017. In a Decision and Order filed on July 18, 2017, the Court denied that motion.

In the present Decision and Order, the Court addresses Plaintiffs' combined Motion to Amend the Complaint, pursuant to Federal Rule of Civil Procdure ("F.R.C.P.") Rule 15 and Motion for Default Judgment, pursuant to F.R.C.P. 54 and 55(b)(2). The Court assumes the parties' familiarity with the underlying factual background and procedural history, which is set forth in the July 18, 2017 Decision and Order.

For the reasons discussed herein, Plaintiffs' Motion for Default Judgment is granted, and Plaintiffs' Motion to Amend the Complaint is denied without prejudice.

**DISCUSSION**

**I. Default Judgment is Warranted in this Case**

Pursuant to F.R.C.P. 55(b), judgment by default may be entered as follows:

> (1) By the Clerk. When the plaintiff's claim against a defendant is a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant. . . .
> (2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefore. . . .

Fed. R. Civ. P. 55(b). By virtue of the default, the defendant is deemed to have admitted to the truth of the well-pleaded allegations of liability in the complaint. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). However, a default "is not considered an admission of damages." Id. (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)); see also Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."); B.B.L. Constructors, Inc., 825 F. Supp. at 16 ("Entry of default judgment on the issue of liability does not necessarily establish

as a fact every imputation in an affidavit which relates to the extent of damages.") (citing Baccaro v. Pisa, 252 F. Supp. 900, 905 (S.D.N.Y. 1966)).

"As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default." Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp.2d 114, 123 (E.D.N.Y. 2011) (citing, inter alia, Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170–171 (2d Cir. 2001) ("When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted.") (citing Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243 (2d Cir. 1994) (relying on Fed. R. Civ. P. 55(c)); Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983)). In its previous Decision and Order, this Court explained that, "[o]n balance, although there is no indication that Plaintiffs would be prejudiced if this Court vacated the notice of default, the first two factors weight strongly in favor of denying Defendants' motion to vacate. . . . Defendants willfully defaulted and have not succeeded in stating a potentially meritorious defense. Accordingly, the Court exercises its discretion to deny Defendants' motion." (Dkt # , p. 17 of 18). As the Court has been presented with no basis for departing from

these findings, the Court will exercise its discretion to grant Plaintiffs' Motion for Default Judgment.

## II.  Scope of Damages Available

In any action under 29 U.S.C. § 1132(g)(2) to enforce an employer's obligation to remit contributions in accordance with the terms of its contract or a plan, the employee benefit plan is entitled to recover, and the court must award, the contributions, interest, liquidated

damages, attorneys' fees and costs. Thus, 29 U.S.C. §1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of the plan to enforce Section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorneys' fees and costs of the action to be paid by the defendant; and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

28 U.S.C. § 1132(g)(2). If an employer's plan contributions are made delinquently during the pendency of an action under this section, the plaintiffs are still entitled to recover the penalties provided for by Section 1132(g)(2). See <u>Iron Workers District Council of W. N.Y. and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators and Erectors, Inc.</u>, 68 F.3d 1502, 1508 (2d Cir. 1995) ("Permitting delinquent employers to avoid paying § 1132 penalties after suit is filed, and particularly waiting until two days prior to the argument of the plaintiffs' motion for summary judgment, as here, would largely thwart the purpose of § 1132(g)(2) to provide plan fiduciaries with an effective weapon against delinquent employers.") (citation omitted).

### III. The Complaint and the Amount of the Default Judgment Sought

An ERISA employee benefit plan is entitled to default judgment for the unpaid contributions, deductions, interest, liquidated damages, audit fees, attorneys' fees and costs where the request for judgment does not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Plaintiffs' first cause of action in the complaint seeks to recover $10,784.41 in contributions and deductions from Flower City plus the following: interest from August 15, 2012, on the $8,562.53 in unpaid Rochester Laborers' Funds' contributions, calculated at a rate of one and one-half percent per month; plus the greater of interest on the $8,562.53 in unpaid Rochester Laborers' Funds'

contributions or liquidated damages equal to twenty percent of those delinquent contributions; plus interest from August 15, 2012, on the $782.51 in unpaid L.E.C.E.T. contributions at the rate of one and one half per month; plus interest from August 15, 2012, on the $131.56 in unpaid A&S deductions, $1,245.21 in unpaid Union deductions and $62.60 in unpaid P.A.C. monies, calculated at the rate of nine percent per annum; plus costs and fees of collection, audit fees, attorneys' and paralegal fees. (See Complaint ("Compl."), ¶ 29).

The second cause of action does not set forth a specific dollar amount, but seeks an order and judgment for "any and all contributions and deductions that are determined to be due [as a result of the audit] plus the applicable interest, liquidated damages, costs and expenses of collection, audit fees and attorneys' and paralegal fees," at the rate set forth in paragraph 25 of the complaint. (See Compl., ¶ 36).

The third and fourth causes of action do not specify a dollar amount, but demand judgment against Paige for "[t]he monies due to Rochester Laborers' Funds as set forth at paragraph No. 27 plus any monies discovered to be due to the Rochester Laborers' Funds as uncovered by the audit sought at paragraph Nos. 35 and 36 of the Complaint herein plus interest thereon at the highest rate of return on Plaintiff Rochester Laborers' Funds' investments, plus the costs and expenses of collection, audit fees and attorneys and

paralegal fees; and . . . [t]o restore to the Plans any profits that Defendants made through use and retention of the assets of the Plaintiff Funds." (Compl., ¶¶ 45, 64).

The fifth cause of action does not specify a dollar amount, but seeks an order and judgment directing Defendants to remit all monies that "are determined to be due to Plaintiffs whether arising before or after commencement of the action." (Compl., ¶ 72).

Finally, the ad damnum clause of the complaint essentially reiterates the allegations in the paragraphs discussed above.

In their motion for default judgment, Plaintiffs now seek judgment against Flower City for $45,159.90. Plaintiffs cite the results of an audit, as well as various affidavits, exhibits, and damage calculations which establish that Flower City owes $16,166.89 in contributions and deductions for the month of July 2012, and the period from March 2014, through May 2014; $9,586.82 in interest through May 15, 2017; $9,586.82 in liquidated damages; $2,258.46 in audit fees; and $7,527.91 in attorneys' fees and costs through May 1, 2017.

Plaintiffs assert that their request for a $45,159.90 judgment against Flower City does not "differ in kind from, or exceed in amount," Fed. R. Civ. P. 54(c), what was demanded in the complaint. While the Court agrees that the items of damages in request for default judgment do not "differ in kind" from what was sought in the complaint, they do "exceed in amount" what was sought in the

complaint. For instance, in the complaint, Plaintiffs sought $10,784.41 in contributions and deductions; in the motion for default judgment, Plaintiffs seek $16,166.89 in contributions and deductions. Therefore, the Court disagrees with Plaintiffs to the extent they assert that their default judgment request does not "exceed in amount," Fed. R. Civ. P. 54(c), what was demanded in the complaint.

Plaintiffs alternatively argue that F.R.C.P. 15 permits an amendment of the pleadings on a dispositive motion or at trial to conform them to the proof, especially where the defendants are given notice of the motion for default judgment and the opportunity to contest damages. The cases cited by Plaintiffs involve situations where there has been a trial or a hearing on the amount of damages, or the defendant had been at least granted the opportunity to contest the damages. Here, Defendants specifically requested an opportunity to challenge the amount of damages in the event this Court declined to vacate the entry of default—which it did in its previous decision and order.

On the matter of damages in the context of a default judgment, F.R.C.P. 55(b)(2) provides that "the court may conduct such hearings or order such references as it deems necessary and proper." Fed. Civ. P. 55(b)(2). As the Second Circuit has explained, the rule "allows but does not require the district judge to conduct a hearing." Action S.A. v. Marc Rich & Co., Inc., 951

F.2d 504, 508 (2d Cir. 1991) (where district judge was "inundated with affidavits, evidence, and oral presentations" a full evidentiary hearing was not necessary), cert. denied, 503 U.S. 1006 (1992) (citing Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989)); see also Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993) ("not necessary for the district court to hold a hearing to fix damages after a default judgment had been entered where the court had 'relied upon detailed affidavits and documentary evidence supplemented by the District Judge's personal knowledge of the record gained during four years involvement with the litigation . . .'").

Here, Plaintiffs have submitted multiple detailed affidavits and documentary proof, which they assert are sufficient to allow their damages to be ascertained "with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d at 155. Defendants have requested an inquest on damages, asserting that they "have demonstrated various errors and discrepancies in Plaintiffs' evidence," and that "Plaintiffs are notably seeking an award nearly nine times greater than what they originally demanded from the Defendants." (Defs' Mem. at 10). The Court declines to order an evidentiary hearing, but does find that Defendants should be given an opportunity to submit their proof in opposition to Plaintiffs' damages calculations.

**CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiffs are entitled to default judgment against Defendants, with the amount of the default judgment to be determined following Defendants' submission of evidence and argument in opposition to Plaintiffs' damages calculations. Defendants' submissions on damages are due thirty (30) days from the date of entry of this decision and order. Plaintiffs' replies, should they wish to file any, are due twenty (20) days from the date of service of Defendants' papers. The Court denies without prejudice Plaintiffs' request for leave to amend the complaint to conform to the proof.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   July 26, 2017
         Rochester, New York